UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LYNETTE MCCANN,

        *Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al*.,

        *Defendants*.

Civil Action No. 23-cv-2398 (JMC)

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants District of Columbia, Daniel Ruto, Rita Blandino, and Shana Hargrove's motion to dismiss or for summary judgment. ECF 13.[1] For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part. The Court declines Defendants' invitation to treat its pending motion as one for summary judgment at this early stage of the case.

**I.    BACKGROUND**

Plaintiff Lynette McCann, proceeding pro se, is employed as a Deputy Clerk for the Domestic Violence Division for the Superior Court of the District of Columbia.[2] *See* ECF 1; ECF 13 at 4. McCann has asthma, which causes her difficulty breathing, chest tightness, and continuous coughing. *See* ECF 13-1 at 3. Because of her asthma, McCann contends that she cannot

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] Because McCann is proceeding pro se, the Court draws the following factual allegations from her complaint, ECF 1, and opposition and attachments thereto, ECF 17. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C. Cir. 2015). The Court also looks to McCann's Equal Employment Opportunity (EEO) Charge, ECF 13-1, because it is referenced in her complaint and is a public document of which the Court may take judicial notice. *See Latson v. Holder*, 82 F. Supp. 3d 377, 382–83 (D.D.C. 2015); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

1

wear a face mask for prolonged periods which, for some time, was required for in-person work in the courthouse during the COVID-19 pandemic. *See id.*

In August 2021, McCann requested an accommodation of full-time telework, under the Americans with Disabilities Act (ADA). *See* ECF 17 at 3; ECF 13-1 at 3. Clifton Grandy[3], the Superior Court's ADA Coordinator, initially granted her request. *See* ECF 17 at 3. Over the next roughly year and a half, McCann requested multiple extensions of her telework accommodation, which Grandy granted. *See* ECF 17 at 3; ECF 1 at 1. However, in late January or early February 2022, Grandy denied McCann's request to continue working fully remote. *See* ECF 1 at 1; ECF 17 at 3. He claimed that allowing McCann to continue to work remotely on a full-time basis would constitute an "undue burden" to the Domestic Violence Division. ECF 17 at 3; *see* ECF 1 at 1. Instead, Grandy told McCann that her division could "extend to [her a] rotational schedule" that would allow her to work from home more days than she would have to work in-person. *See* ECF 17 at 3.

In February 2022, McCann returned to work at the courthouse in-person. ECF 17 at 3. She noticed ongoing construction near her workspace and learned that the courthouse was being treated for asbestos. *See id.* McCann had an asthma attack and a panic attack and was taken to the hospital by ambulance. *See id.*; ECF 1 at 2.

McCann continued to request full-time telework as an accommodation and provided medical documentation to support her requests. *See* ECF 17 at 3; ECF 13-1 at 3. The Court continued to deny her requests, stating that McCann "cannot perform all the essential functions of [her] job while teleworking." ECF 13-1 at 3. McCann alleges that she is "able to perform the essential duties of [her] job with reasonable accommodations" and full-time telework "would not

---

[3] Grandy is also named as a defendant in this suit, *see* ECF 1 at 1, but does not appear to have been served and has not appeared.

be an undue hardship." *Id.* She also claims that Grandy took too long to respond to some of her inquiries. *See* ECF 17 at 3. At one point, McCann asked Grandy "if there was another office [she] could work in that allowed remote work," and Grandy replied that he "didn't know of any other office that could accommodate [her]." *Id.* McCann further contends that neither Human Resources nor her supervisors, Defendants Blandino and Ruto, assisted her in her efforts to obtain an appropriate accommodation. *See* ECF 17 at 4–6.

McCann applied for leave under the Family and Medical Leave Act (FMLA). ECF 1 at 2; ECF 17 at 4. She submitted her request to Defendant Hargrove. ECF 17 at 4. Hargrove initially denied her request, claiming that McCann lacked sufficient qualifying hours. *See* ECF 1 at 2; ECF 17 at 4. Ultimately, after "going back & forth" with Hargrove, she approved McCann's request for FMLA leave, but for a much shorter period (six months) than McCann had requested (one year). ECF 1 at 3; ECF 17 at 4.

McCann further alleges that, during this time, Ruto sent her frequent and "harassing" texts about the status of her return to work. *See* ECF 1 at 5; ECF 17 at 4. She also claims that Ruto would schedule last-minute meetings or email her about meetings after work hours in order to "set[] [her] up for failure." ECF 17 at 4.

On November 3, 2022, management placed McCann on "leave restriction" which prohibited her from teleworking for three months. *Id.* at 4–5; ECF 13-1 at 4. Her pleadings allege a host of other conduct that she contends was discriminatory. For example, McCann claims that Defendants continued to allow her coworkers to telework despite restricting her ability to do so, ECF 17 at 4, 6, and that Blandino denied her request for "leave donation" from other employees, *see id*. at 6. McCann also states that, in November 2022, she "began to have chest [and] head pain"

3

at work and was again taken to the hospital by an ambulance. ECF 1 at 5–6. And, McCann alleges she was told that Blandino and Ruto "were trying to find a way to terminate [her]." *Id.* at 6.

As a result of Defendants' alleged conduct, McCann filed an EEO Charge with the Equal Employment Opportunity Commission (EEOC) in November 2022. *See* ECF 1 at 6–7; ECF 13-1. She marked the box for "disability discrimination," which she noted was "continuing." *See* ECF 13-1 at 1. McCann alleges that after she filed her EEO Charge, Blandino and Ruto sent her harassing emails and text messages. *See* ECF 17 at 6.

McCann filed this lawsuit on August 14, 2023. ECF 1. Construed generously, her complaint appears to allege that Defendants failed to accommodate her disability and discriminated against her in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, and interfered with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1). *See id.* She demands "all [of her] leave (sick + annual) and [to] be able to continue 100% teleworking and medical bills." ECF 1 at 7. She also seeks unspecified damages for pain and suffering. *See id.* Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. ECF 13.[4] The Court issued an order advising McCann of her obligations in responding to Defendants' motion. ECF 15. McCann filed an opposition, ECF 17, and Defendants filed a reply, ECF 19.

## II.   LEGAL STANDARDS

### a. Failure to State a Claim

In considering a Rule 12(b)(6) motion for failure to state a claim, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to

---

[4] An exact duplicate of Defendants' pending motion is docketed at ECF 14.

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of the allegations contained in a complaint," but need not do the same for legal conclusions or "naked assertions" of wrongdoing devoid of supporting facts. *Id.*; *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pro se complaint, however, is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The Court must consider McCann's complaint "in light of all filings," including her opposition and the documents attached thereto. *Brown*, 789 F.3d at 152; *see Abdelfattah*, 787 F.3d at 529.

At the motion-to-dismiss stage, the Court may take judicial notice of public records and documents that "are referred to in the complaint and are integral to [the plaintiff's] . . . claim." *Kaempe*, 367 F.3d at 965. In the employment discrimination context, courts routinely consider a plaintiff's EEO charge "without converting a motion to dismiss into a motion for summary judgment because such records are public document[s] of which a court may take judicial notice." *Latson*, 82 F. Supp. 3d at 382–83. And, courts treat attachments to an EEO complaint, such as McCann's "EEOC Narrative," ECF 13-1 at 3–4, "as part of the [EEO] complaint itself and a basis for articulating claims," *Crawford v. Duke*, 867 F.3d 103, 107 (D.C. Cir. 2017).

### b. Failure to Exhaust

Generally, before bringing a discrimination suit in federal court, "ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997). Failure to exhaust administrative remedies under the ADA is an affirmative defense,

not a jurisdictional requirement, and is therefore analyzed under Rule 12(b)(6). *See, e.g.*, *Scott v. Dist. Hosp. Partners*, 60 F. Supp. 3d 156, 161–62 (D.D.C. 2014), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).

### III.   ANALYSIS

Defendants move to dismiss McCann's ADA and FMLA claims, arguing that she has failed to state a claim on which relief can be granted. The Court considers each argument for dismissal in turn below.

#### a.   ADA Claims

##### i.   Claims Against the Individual Defendants

The Court agrees with Defendants that McCann's ADA claims against Blandino, Ruto, and Hargrove must be dismissed. McCann does not specify whether she intended to sue these Defendants in their official or individual capacities, *see generally* ECF 1, but the Court dismisses her ADA claims against these individuals in either circumstance.

First, McCann cannot simultaneously sue Defendants in their official capacities and the District of Columbia, who is also a defendant in this case. That is because an "official capacity suit is . . . to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). It is therefore superfluous to sue both a municipality and its employees in their official capacities. *See, e.g.*, *Younger v. D.C. Pub. Schs.*, 60 F. Supp. 3d 130, 142 (D.D.C. 2014) (dismissing defendants sued in their official capacities from ADA suit because plaintiff had also named the District and "[a] suit for damages against municipal officials in their official capacities 'is . . . equivalent to a suit against the municipality itself'" (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996))). Accordingly, to the extent McCann intended to sue these Defendants in their official capacities, those claims are dismissed as redundant.

Second, McCann cannot sue Defendants in their individual capacities. The ADA's provisions, as relevant here, provide a cause of action only against "covered entit[ies]." *See* 42 U.S.C. § 12112(a). The statute defines a "covered entity" as "an employer, employment agency," and the like. *Id.* § 12111(2). An individual supervisor is not a "covered entity." *See id.*; *see also Smith v. Janey*, 664 F. Supp. 2d 1, 8 (D.D.C. 2009), *aff'd sub nom. Smith v. Rhee*, No. 09-7100, 2010 WL 1633177 (D.C. Cir. Apr. 6, 2010) (per curiam). Because there is no individual liability under the ADA, McCann's ADA claims against Blandino, Ruto, and Hargrove must be dismissed.

###### ii. Claims Against the District

The Court turns next to McCann's ADA claims against the District. The District reads McCann's complaint to allege that it: (1) failed to accommodate her disability; (2) discriminated against her on the basis of her disability; (3) unlawfully retaliated against her; and (4) subjected her to a hostile work environment in violation of the ADA. The District moves to dismiss these claims. As explained in greater detail below, the Court denies the District's motion to dismiss McCann's failure-to-accommodate and disparate treatment claims, but grants the District's motion to dismiss (and accordingly dismisses) McCann's ADA retaliation and hostile work environment claims, to the extent she intended to bring them.

###### 1. Failure to Accommodate

To state a claim for failure to accommodate in the workplace, a plaintiff must allege that (1) she is a qualified individual with a disability who can perform the essential functions of her job; (2) her employer had notice of her disability; (3) she requested a reasonable accommodation from her employer; and (4) her employer denied her request for a reasonable accommodation. *See Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014).

The District does not dispute that McCann was a qualified individual or that it had notice of her disability, but it does dispute whether McCann was denied a reasonable accommodation. *See* ECF 13 at 9–11. First, the District argues that it sufficiently accommodated McCann's disability by providing her with not one, but two accommodations—full-time telework and then rotational telework. *Id.* at 10. According to the District, McCann's dissatisfaction with the accommodations it provided does not give rise to an ADA claim. *See id.* at 10–11. Second, the District contends that McCann's preferred accommodation—continued full-time telework—was unreasonable because it would have created an undue burden for the Superior Court. *See id.* at 11. At this early stage, the Court must disagree.

As to the District's first argument, McCann's filings acknowledge that the District provided her with a full-time telework accommodation for her disability from August 2021 until late January or early February 2022. *See* ECF 1 at 1; ECF 17 at 3. But, according to her complaint and opposition, that accommodation was ultimately revoked. *See* ECF 1 at 1; ECF 17 at 3. McCann alleges that despite her continued requests and need for accommodation, the District denied her requests to continue teleworking full-time, ECF 1 at 1, and prohibited her from teleworking at all for at least three months, ECF 17 at 4–5. As to the District's argument that it offered McCann "rotational telework" as an alternative reasonable accommodation, McCann seems to allege either that rotational telework was not a sufficient accommodation, or that her supervisors did not in fact allow her to telework on a rotational basis. *Compare* ECF 13-1 at 4 ("To date, I have still not received a reasonable accommodation for my asthma and am suffering every day that I have to work in person."), *with* ECF 17 at 4–5 ("My leave restriction consists of working everyday onsite . . . even after Mr. Grandy stated in a[n] email that I[] DIDN'T HAVE TO WORK ONSITE

8

EVERYDAY."). Either way, that amounts to an argument that the District failed to provide McCann a reasonable accommodation for her disability from February 2022 onward.

An employer's "duty to accommodate is a continuing duty that is not exhausted by one effort." *Norden v. Samper*, 503 F. Supp. 2d 130, 145 (D.D.C. 2007) (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)). Taking McCann's allegations as true, as the Court must, she has plausibly alleged that the District failed to provide her a reasonable accommodation after February 2022.

With respect to the District's argument that McCann's requested accommodation was not a reasonable one, the Court cannot make that finding on the limited record before it. An accommodation is reasonable under the ADA if it allows an employee "to perform all the essential functions of her job without creating an undue hardship for the agency." *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994). That is a "fact intensive" inquiry. *Howard v. Gutierrez*, No. 04-cv-0756, 2005 WL 3274394, at *2 (D.D.C. Sept. 30, 2005). Here, the Court does not have sufficient information about McCann's job duties and responsibilities to make that determination as a matter of law. And the Court must assume that McCann's allegations are true. While Grandy told McCann that continued telework would impose an undue burden on the Superior Court's operations, ECF 1 at 1, McCann's complaint (along with the incorporated documents and her opposition) tell a different story. According to McCann, she *could* perform the essential functions of her job remotely. *See* ECF 13-1 at 3. Indeed, she alleges that she was doing just that when Defendants denied her request for an extension of her accommodation, and she further maintains that other employees were permitted to telework. *See* ECF 17 at 2, 6.

The District might well be correct that it would have been unreasonable for McCann to continue teleworking full-time because of the nature of her job duties. But that is a matter that will

9

have to be fleshed out in discovery. Because McCann's filings include sufficient allegations to state a failure-to-accommodate claim, the Court denies the District's motion to dismiss that claim.

2. Intentional Disability Discrimination Based on Disparate Treatment

The Court also finds that, with some caveats, McCann has sufficiently stated a claim for disability discrimination. The ADA prohibits employers from discriminating against employees on the basis of disability in regard to, as relevant here, the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state such a claim, a plaintiff "must plausibly allege that [s]he was discriminated against on account of [her] disability," with respect to the terms, conditions, or privileges of her employment, and must do so by alleging some facts that "give rise to the reasonable inference that [her] disability was the reason for defendant's actions." *Brown v. McDonough*, No. 22-cv-3209, 2024 WL 1344417, at *4 (D.D.C. Mar. 29, 2024).

The District argues that McCann has failed to state a claim because (1) much of her complaint challenges conduct that is not actionable; (2) she has not alleged sufficient facts to suggest that the challenged actions were taken because of her disability; and (3) she failed to exhaust much of what she alleges in her complaint. *See* ECF 13 at 12–17. The Court considers each argument in turn below.

First, whether McCann is seeking to challenge conduct that is not actionable under the ADA depends upon how you read her complaint. The District takes issue with McCann's allegations that she received harassing emails from her supervisors and heard that certain supervisors wanted to fire her, because neither is the type of conduct that impacts an employee's terms, conditions, or privileges of employment. *See id.* at 14–16. The Court is not sure that McCann included these allegations in her complaint as discrete acts of intentional discrimination for which she is suing. As the Court understands her complaint, McCann is challenging the

District's conduct related to her requests for accommodations and medical leave. She may have included allegations about her interactions and relationships with her supervisors as relevant background information. But, to the extent McCann intended to challenge this conduct as discrete acts of disability discrimination, the Court agrees with Defendants. After all, "not everything that happens at the workplace affects an employee's terms, conditions, or privileges of employment." *Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022). Chatter that McCann may have heard about a supervisor who wanted to fire her (that apparently never materialized) or disrespectful emails that ultimately did not impact her employment do not independently give rise to a disability discrimination claim. *See, e.g.*, *Ramsey v. Moniz*, 75 F. Supp. 3d 29, 50 (D.D.C. 2014) (finding that the plaintiff's "conclusory allegation" that her supervisor "'harassed' her regarding her use of FMLA" did not constitute an adverse action for disability discrimination claim); *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 66 (D.D.C. 2019) (determining, in the context of a disability discrimination claim, that "Defendants' threats to terminate Plaintiff, alone, do not constitute an adverse employment action"); *Garza v. Blinken*, No. 21-cv-2770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (holding that a "proposed letter of reprimand" did not constitute an adverse employment action because the complaint was "devoid of *any* facts suggesting that the proposed letter affected the terms and conditions of [the plaintiff's] employment").

However, the Court finds that McCann has stated a disability discrimination claim based upon the District's denials of her requests for a telework accommodation and its imposition of leave restrictions. Contrary to the District's position, *see* ECF 13 at 16, the Court finds that

McCann has done enough at this stage to allege that the District took the challenged actions because of her disability.[5]

One way that a plaintiff can allege discriminatory disparate treatment is by pointing to comparators—"similarly situated employees outside [her] protected group" who received more favorable treatment. *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). McCann alleges that the District treated her differently than other employees who were allowed to telework and take leave without the restrictions the District placed on her. *See* ECF 1 at 5; ECF 17 at 4–6. If McCann intends to rely on comparator evidence to prove her claims, she will ultimately have to establish that these other employees are adequate comparators and that they were, in fact, treated differently than she was. But at the motion-to-dismiss stage, and given the requirement to generously construe a pro se litigant's filings, McCann's allegations are sufficient (although just barely) to get her to discovery. *See Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) (noting that while "[a]llegations regarding comparators, racial comments, and pretext obviously strengthen a discrimination complaint," the "evidentiary requirements" at the pleading stage are substantially less onerous than at summary judgment or trial)*; see, e.g.*, *Niles v. U.S. Capitol Police*, No. 16-CV-1209, 2019 WL 1858503, at *7 (D.D.C. Apr. 25, 2019) (explaining that an employment discrimination plaintiff need not necessarily "show that her comparators engaged in similar conduct" at the motion-to-dismiss stage, and that the plaintiff "should be allowed an opportunity to develop her factual assertions through discovery").

Finally, the District argues that McCann failed to administratively exhaust her claims that the District imposed a discriminatory, three-month leave restriction and Ruto failed to properly

---

[5] The District does not dispute that the revocation of telework privileges and other work schedule modifications and restrictions are actionable under certain circumstances. *See Pressley v. Mgmt. Support Tech., Inc.*, No. 22-cv-2262, 2023 WL 520610, at *8 (D.D.C. Aug. 14, 2023) (collecting cases in which the suspension of telework benefits or flexible work schedules constituted adverse employment actions).

12

respond to a grievance she filed about the leave restriction. *See* ECF 13 at 13; ECF 19 at 6–7.[6] The Court does not understand McCann to be arguing that Ruto's failure to respond to her grievance constitutes a free-standing disability discrimination claim—rather, this seems to be information she included to tell the story of the District's alleged discrimination against her. There is therefore no need for the Court to consider whether McCann exhausted such a claim. And McCann did exhaust her claim that the District discriminated against her by imposing a leave restriction. Her EEO charge alleges that, "on November 3, 2022, I was informed by Daniel Ruto, Branch Supervisor, that he was placing me on leave restriction, which includes in part not permitting me to telework at all for the next three months." ECF 13-1 at 4. She goes on to discuss the nature of those leave restrictions and the fact that other employees were not subjected to similar treatment. *See id*. McCann has therefore exhausted this claim.

### 3. Retaliation

The District moves to dismiss McCann's complaint to the extent she intended to bring a claim for retaliation. ECF 13 at 18–19. The Court does not necessarily read McCann's complaint as bringing such a claim. But because her opposition does not clarify the matter one way or the other, the Court will address the District's argument and dismiss any retaliation claim.

To make out a retaliation claim, a plaintiff must establish that (1) she suffered a materially adverse action, (2) because she complained about discrimination. *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). McCann does allege that after she filed her EEO Charge, Blandino and Ruto sent her harassing emails and messages. *See* ECF 17 at 6. But despite the broad sweep of what can constitute a materially adverse action for a retaliation claim, these emails and texts do

---

[6] The District also argues that McCann did not exhaust her claims about receiving harassing emails from her supervisor or any rumors regarding her termination, *see* ECF 13 at 13, but the Court need not address those arguments because it agrees that these allegations do not state a claim for disability discrimination.

13

not qualify. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010); *see, e.g.*, *Ramsey*, 75 F. Supp. 3d at 53 (finding that the plaintiff's allegations that her supervisors frequently sent her emails with a "very harsh and angry tone," and made "very rude and disrespectful comments" were not adverse actions for purposes of a disability retaliation claim).

The District also contends that any claim of retaliation that is based on its alleged denial of a telework accommodation must be dismissed because allegations giving rise to McCann's failure-to-accommodate claim cannot also form the basis of a separate retaliation claim. The Court agrees, and the weight of authority holds the same. *See Harris v. Chao*, 257 F. Supp. 3d 67, 89 n.28 (D.D.C. 2017) ("Cases in this jurisdiction have held that the denial of a request for reasonable accommodation cannot serve as the nucleus of both a discrimination claim and a retaliation claim[.]"); *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013) ("[I]f the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled."); *LaRochelle v. Lynott*, No. 22-cv-0115, 2023 WL 6215365, at *8 (D.D.C. Sept. 25, 2023) (finding that the plaintiff could not "take the position that denial of a request for reasonable accommodation is itself a basis for a retaliation claim"); *Brown v. Trinity Wash. Univ.*, No. 22-cv-1612, 2023 WL 2571729, at *5 (D.D.C. Mar. 20, 2023) ("[A]dverse actions that are the subject of plaintiff's failure to accommodate claim . . . do[ ] not supply grounds for a separate retaliation claim."). This does not mean that a plaintiff cannot simultaneously bring a failure-to-accommodate and a retaliation claim if she "alleges a distinct retaliatory act . . . in addition to the denial of [her] request for a reasonable accommodation." *Harris*, 257 F. Supp. 3d at 90 n. 28. But McCann's allegations are not clear about whether she is trying to do that—or bring any retaliation claim at all—so the Court finds that she has not sufficiently stated a retaliation claim.

4. Hostile Work Environment

The District also moves to dismiss any hostile work environment claim, to the extent McCann intended to bring one. ECF 13 at 17–18. Like the Court just observed in addressing the District's retaliation arguments, it is not clear that McCann intended to bring a separate hostile work environment claim. But the Court will nonetheless address the District's argument and agrees that any hostile work environment claim must be dismissed.

To prevail on a hostile work environment claim, a plaintiff must ultimately establish that "h[er] employer subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In assessing such a claim, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*

McCann's complaint does make reference to harassing texts and emails she allegedly received from her supervisors, although she does not say much about the content of those messages. *See* ECF 17 at 4, 6. She also alleges that Ruto would send her emails about meetings after working hours and "assume the next day the emails were seen," which she believed was an attempt to "set [her] up for failure." *Id.* at 4. Assuming that McCann included these allegations in her complaint as the basis of a hostile work environment claim, the Court agrees with Defendants that these allegations do not describe the sort of "discriminatory intimidation, ridicule, and insult" that is so "severe or pervasive" as to give rise to an actionable claim. *See, e.g.*, *Ramsey*, 75 F. Supp. 3d at 56–57 (dismissing hostile work environment claim where the plaintiff's "relationship with her supervisor was strained," and her supervisor allegedly mishandled her sick leave and removed

15

her from her preferred workspace); *Heavans v. Dodaro*, 648 F. Supp. 3d 1, 18–19 (D.D.C. 2022) (finding that "rude comments and criticism regarding plaintiff's accent and gender; exclusion of plaintiff from meetings, emails, and management decisions; harsh feedback in his performance review; and revocation of his flexible schedule and managerial responsibilities" were "not so severe or pervasive as to be objectively hostile or abusive").

### b. FMLA Claims

Next, the Court turns to Defendants' motion to dismiss McCann's claim for FMLA interference.[7] ECF 13 at 22–23. The FMLA "entitles eligible employees to take unpaid leave for family and medical reasons." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160 (D.C. Cir. 2015). For an FMLA interference claim, McCann must establish "(1) employer conduct that reasonably tends to interfere with, restrain, or deny the exercise of FMLA rights, and (2) prejudice arising from the interference." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1376 (D.C. Cir. 2020). Courts have found prejudice where "an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Cobbs v. Bluemercury, Inc.*, 746 F. Supp. 2d 137, 144 (D.D.C. 2010) (citing 29 U.S.C. § 2617(a)(1)). Again, construing McCann's allegations generously, the Court finds that she has done enough to proceed to discovery.

McCann insists that Hargrove repeatedly denied her legitimate requests for FMLA leave, claiming that she did not have sufficient qualifying hours. *See* ECF 1 at 2–3; ECF 17 at 4. McCann

---

[7] Defendants do not distinguish between FMLA claims brought against the District and FMLA claims brought against any individual Defendant in his or her individual capacity. "Courts are split on whether public employees can be held individually liable for damages under the FMLA," and "[t]he D.C. Circuit has yet to reach the question." *Austin v. Wash. Metro. Area Transit Auth.*, No. 19-cv-2718, 2020 WL 2962609, at *13 (D.D.C. May 28, 2020); *see Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 150 & n.10 (D.D.C. 2015) (collecting cases). Because Defendants do not argue that McCann cannot maintain FMLA claims against any individual Defendant, the Court need not address the issue today.

also alleges that Hargrove questioned the status of her medical condition and required her to obtain duplicative medical documentation in support of her requests, which McCann had to pay for. *See* ECF 1 at 3; ECF 17 at 4. According to McCann, Hargrove eventually admitted that she had enough hours for FMLA leave and granted her request, but for a much shorter period of time than McCann believes she was entitled. *See* ECF 17 at 4. And when McCann asked why she did not receive the full amount of leave time she requested, Hargrove allegedly told McCann that for any additional leave beyond what was granted, she would need to comply with certain recertification procedures and, again, expend costs to obtain additional medical documentation. *See id.*

Although McCann acknowledges that she ultimately took some FMLA leave, an employer's interference need not be "effective" to give rise to a FMLA interference claim. *Gordon*, 778 F.3d at 165. In other words, even an employee who does take FMLA leave may have a valid interference claim if her employer acted "with a reasonable tendency to 'interfere with, restrain, or deny' the 'exercise of or attempt to exercise' an FMLA right." *Id.* Under a generous reading of McCann's filings, she alleges (1) that Hargrove made her jump through unnecessary hoops in connection with her leave request, which interfered with her ability to take leave for at least some period of time, and (2) that Defendants did deny her FMLA leave because they did not grant her the full amount of leave to which she claims she was entitled.[8] At this early stage, and especially

---

[8] On reply, Defendants argue that McCann's timesheets, which she submitted with her opposition, demonstrate that she did not accrue enough hours to be eligible for FMLA leave. *See* ECF 19 at 13. This is fundamentally a factual question that is best resolved on summary judgment with a full record, so the Court need not address it today. Defendants also argue that the fact that McCann's FMLA leave was only approved for six months cannot give rise to an interference claim because "the relevant regulation provides that '[i]n all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee." *Id.* (quoting 29 C.F.R. § 825.308(b)). The District may well be correct that, in light of this regulation, Hargrove was legitimately authorized to request re-certification of McCann's FMLA leave at the six-month mark. But McCann seems to be alleging that the District purposefully gave her the run around to interfere with her ability to take leave, requiring her to jump through additional and unusual hoops—and the Court must accept these allegations are true. Defendants are of course free to raise these arguments again at a later stage when the record before the Court is more developed.

given that McCann is pro se and the Court must construe her filings liberally, that is enough to state a claim.

The Court also finds that McCann has done enough to allege prejudice, although it admits her allegations are thin. A plaintiff may be prejudiced by "actual monetary losses sustained by the employee as a direct result of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(II). Here, McCann alleges that she had to pay unnecessary costs due to Hargrove's alleged interference. *See Gordon*, 778 F.3d at 163, 166 (finding that the plaintiff's travel expenses incurred as a result of alleged FMLA interference could qualify as prejudice). This is sufficient at the pleading stage to state an interference claim. McCann will have to amass sufficient evidence to withstand summary judgment and ultimately prove her claims, but her filings state a claim for FMLA interference.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF 13, is **GRANTED** as to McCann's ADA claims against the individual Defendants; **GRANTED** as to McCann's ADA claims against the District for retaliation and hostile work environment; and **DENIED** as to (1) McCann's ADA claims against the District for failure to accommodate and for disparate treatment, and (2) McCann's FMLA interference claim.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 31, 2025